COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Petty, Athey and Senior Judge Clements

JOHN FRANKLIN HIGGINS

v.      Record No. 0359-21-3

BEDFORD COUNTY DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION[*]
PER CURIAM
AUGUST 31, 2021

FROM THE CIRCUIT COURT OF BEDFORD COUNTY
James W. Updike, Jr., Judge

(Rebecca L. Wetzel; Wetzel Legal, PLLC, on brief), for appellant.

(Brandon K. Butler, Senior Assistant County Attorney; Brandon S.
Baker, Guardian *ad litem* for the minor child, on brief), for appellee.

John Franklin Higgins (father) appeals the circuit court's orders terminating his parental

rights and approving the foster care goal of adoption. Father argues that the circuit court erred in

terminating his parental rights and approving the foster care goal of adoption, rather than placing the

child with the paternal grandmother (hereafter "the grandmother"). Upon reviewing the record and

briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily

affirm the decision of the circuit court. See Rule 5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cnty. Dep't of Hum. Servs., 63 Va. App. 157, 168 (2014)).

Father and Matilda Ray (mother) are the biological parents to the child who is the subject of this appeal.[2] The child previously had entered foster care when she was three months old because mother and father were feeding the child "bottles of sweet tea."[3] Following the child's return, mother and the child moved to Bedford County.

On July 31, 2018, the Bedford County Department of Social Services (the Department) removed the child, who was two years old at the time, from mother's custody after receiving a report alleging that mother's paramour had sexually abused the child.[4] Father was not living with the child when she was removed from mother's custody.

The Department required father to complete certain services before he could be considered as a possible placement for the child. Although father completed the required

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] In November 2019, mother signed an entrustment agreement and voluntarily relinquished her parental rights.

[3] The Department presented evidence that mother and father were living with the grandmother in Rockbridge County at the time of the child's first removal, but the grandmother testified that mother and father lived "up the road" from her house at the time.

[4] The Department subsequently determined that the complaint against mother's paramour was unfounded.

psychological evaluation, he did not follow through with other recommended services, such as parenting classes and parent mentoring. Father had started parenting classes, but he did not complete them.

The Department discovered that father had "some fairly significant limitations." Father relied on the grandmother to make legal, financial, and medical decisions for him. Father had been diagnosed with lymphoma and was undergoing treatment while the child was in foster care.[5] The grandmother testified that father's cancer treatments affected his ability to participate in visits and services.

Father lived with the grandmother and her husband in a one-bedroom home. Father slept in the living room, while the grandmother and her husband slept in the only bedroom. The family anticipated the child sleeping in her own bed in the corner of the grandmother's bedroom.

The Department considered the grandmother as a possible relative placement and informed her that she could petition for custody. She filed her petition for custody one year after the child had been in foster care.[6] The Department ultimately did not recommend the grandmother as a possible placement due to concerns about her housing and finances.

The Department offered visitation to father and his family. Father behaved appropriately during the visits; however, he visited inconsistently and did not see the child for months at a time. The Department suspended in-person visits at the onset of the COVID-19 pandemic but allowed telephone visits. Again, father's contact was "inconsistent."

---

[5] Father's lymphoma was in remission at the time of the circuit court hearing.

[6] The grandmother claimed that she had received conflicting advice about filing a petition for custody.

On November 22, 2019, the Bedford County Juvenile and Domestic Relations District Court (the JDR court) terminated father's parental rights and approved the foster care goal of adoption. Father appealed to the circuit court.[7]

On December 10, 2020, the parties appeared before the circuit court. The Department presented evidence that the child had been living with the same foster family since her removal. The child was almost five years old and did not have any special needs. The child had participated in play therapy when she first entered foster care but no longer required it at the time of the circuit court hearing.

The Department presented evidence that father had not had contact with the child for approximately two months, and some of their previous telephone calls were of extremely short duration. Father had not presented to the Department a plan for how he would support and care for the child.

At the conclusion of the Department's evidence, father moved to strike, which the circuit court denied. The grandmother testified that she had obtained a bunk bed for the child and placed it in the corner of her bedroom. She intended to place a curtain around the bed so that the child could have privacy. The grandmother had been looking "for a bigger place," but her search had been hindered by financial constraints and the COVID-19 pandemic.

The grandmother testified that she loved the child and was willing to have her live with them. She confirmed that she would "maintain a positive and continuous relationship with [the child] throughout her childhood." The grandmother had maintained consistent contact with the child by calling her weekly after the Department ended the in-person visits due to the COVID-19 pandemic. The grandmother claimed that the family was financially able to meet the child's

---

[7] The grandmother appealed the JDR court's denial of her custody petition to the circuit court. She did not appeal the circuit court's denial of her custody petition to this Court.

needs, including food, housing, utilities, and medical care. Although she and father did not work, the grandmother's husband worked. The grandmother further confirmed that she was committed to "maintaining a stable residence and stable educational plans" for the child. She had even contacted the school that the child would attend.

The guardian *ad litem* reported that he had visited the grandmother's home and found it to be clean but not suitable for the child. The guardian *ad litem* described the bedroom as "barely bigger than the beds" and that there was "maybe two feet between the beds." The guardian *ad litem* noted that if a curtain was placed around the child's bed, the child "would be living in a bed with walls all around it, smaller than a prison cell . . . ." While acknowledging that the grandmother and father love the child and want the best for her, the guardian *ad litem* did not find their home to be "a suitable environment" for the child.

After hearing the evidence and the parties' arguments, the circuit court terminated father's parental rights under Code § 16.1-283(C)(2) and approved the foster care goal of adoption. The circuit court also found that the grandmother was not an appropriate relative placement and denied the grandmother's petition for custody. This appeal followed.

ANALYSIS

Father argues that the circuit court erred in terminating his parental rights to the child and approving a foster care goal of adoption, as opposed to placing the child with the grandmother.[8]

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018)

---

[8] Father's argument focuses solely on whether the grandmother was a suitable relative placement and not on the sufficiency of the evidence to support the circuit court's termination of his parental rights under Code § 16.1-283(C)(2). Father conceded that "he alone was [not] an appropriate placement" for the child.

(quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Before terminating a parent's rights, "the court shall give a consideration to granting custody to a person with a legitimate interest . . . ." Code § 16.1-283(A). Before transferring custody of a child to a person with a legitimate interest, the court shall make a finding, based upon the preponderance of the evidence, that the person

> (i) is . . . willing and qualified to receive and care for the child; (ii) is willing to have a positive, continuous relationship with the child; (iii) is committed to providing a permanent, suitable home for the child; and (iv) is willing and has the ability to protect the child from abuse and neglect . . . .

Code § 16.1-283(A1).

The circuit court found that the grandmother was a person with a legitimate interest. The circuit court examined the factors under Code § 16.1-283(A1) and found that the grandmother could not provide "a permanent, suitable home for the child." After hearing evidence of the limited space for the child and the grandmother's unsuccessful efforts to find a larger home, the circuit court found that the grandmother's home was not suitable. The circuit court further found that the grandmother did not have "the ability to protect the child and ensure that she's not neglected." The grandmother did not work and relied on her husband to provide for her financially. The circuit court found that the preponderance of the evidence did not show that the grandmother could provide the child "with the things that she needs to be a healthy little girl," such as "suitable food, clothing, [and] education."

After considering the evidence and arguments, the circuit court found that the grandmother was not a viable relative placement.  "Because this Court defers to a lower court's judgment based on evidence heard *ore tenus* unless plainly wrong or without support, <u>Logan</u>, 13 Va. App. at 128, it does not disturb the circuit court's ruling that no relatives were suitable placements." <u>Castillo</u>, 68 Va. App. at 568.  Accordingly, the circuit court did not err in terminating father's parental rights and approving the foster care goal of adoption.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed.  Rule 5A:27.

<u>Affirmed.</u>